May it please the Court. My name is Lee Werner and I represent appellants Dennis Tran, Stacey Tran, and Dennis Produce, Inc., and I'll refer to them as Produce, as I did in the brief. I would like to save three minutes of my time for rebuttal. Your Honors, the duties of insurers to defend their insurers from third-party claims are very broad under California law. However, in this case, those duties were never acknowledged by the insurer, Hartford, either in its appellee's brief or in its conduct in dealing with the third-party claim that is the subject of this action. For example, the leading case in this area is Gray v. Zurich, which states that an insurer must defend a suit which potentially seeks damages within the coverage of the policy. So let's get right to the questions of coverage, granted coverage, right? First of all, you've got a grant of property damage coverage, right? Property, yes. This is no risk. It's a specified perils policy, right? Yes. Okay. You've got property damage coverage, which requires an occurrence. Yes. Occurrence is defined as an accident. Right. Brian sued Dennis because Dennis allegedly stole Farmer Jorge from him. Right. As Pravda used to say, it is not by accident that he stole him. All right. Well, let's go into that. One has to look at the allegations of the complaint and the underlying action, Your Honor. Brian sued, and they made allegations, a lot of allegations, but most of them were equivocal. For example, Your Honor, they did say that the conduct was intentional, that there was an oral contract between Brian and Jorge. Right. That our client should have known about. They don't say how we should have known about it, but they say there was an oral contract. All right. But the other thing they say, Your Honor, they say alternatively, if there was an oral contract, they're not sure, there was some kind of a business relationship which existed between Brian and Jorge, which gave notice to others. But the act of Brian, pardon me, the act of Dennis was an intentional act, which is, Jorge, I'd rather you do business with me. Right? No. Regardless of what he knew or should have known, whether he was negligent in finding out, et cetera, the actual act which caused the injury was an intentional act of stealing a client from Brian, according to Brian. Okay. Let's talk about it, Your Honor. We're not really sure about that, because when you look at the allegations of the complaint, of the underlying complaint filed by Brian Distributing, they say that Jorge was obligated under its agreement or his agreement with Brian to sell a majority of the crops to Brian. Well, that leaves open the possibility. As a matter of fact, not only the possibility, but admits that there's other crops that were, I guess, paid for by Brian, which Jorge can sell to others. To the extent that Jorge was obligated or wasn't obligated to sell to Brian, the allegations of the Brian complaint are that Dennis intentionally stole Jorge as a farmer from Brian, not by accident, not thinking that Jorge was somebody else, not by mistake, but as a business decision calculated for profit. That is an allegation. That is not an occurrence or an accident under your coverage policy, is it? Well, no, Your Honor, but I think you have to look at the other possibilities because of the way the complaint was pleaded. Well, let's look at the complaint. Third cause of action. The only one they would have even had to think about because you allege four different things. But if you're going to be an insurance company, you're going to look for the negligence because that's the only thing they're ever going to get to. So let's look at the third cause of action. Let's look at the paragraphs. The only place it talks about negligence is in 49. And it says, And then 50 says, Now, you're suggesting that I can get to negligence on that and I've got to compare the allegations of the complaint then to the policy. Now, Judge Baez listed it out as it is, but I listed it out as you pled it. Well, let's That's all the insurance company can look at is as you plead it. And you say negligence, but then when you plead it, you don't say they're convincing people to repeatedly breach on each of many days and then with notwithstanding their knowledge of the interest. How does that go to negligence? Why should the insurance company stand up? That doesn't look like accident. I'd like to approach on two different grounds. Your Honor, you indicated that the only possible basis for coverage was the negligence cause of action. I respectfully disagree. Well, frankly, as to the pleadings that you pled, that's the only one. Well, the problem with the court's analysis and approach is that an insurer under California law isn't merely limited to the four corners of the complaint. I understand, but I'm just taking it as you pled. We'll get to the markings and whether that applies. We'll get to whether they have done anything under the contract. We're still under Judge Baez's situation. He's talking about property damage, and he's talking about accident, and I'm talking about how you pled it. Well, I didn't plead it. I mean, we've got the insurance. Here's the accident. The accident is there was, in fact, some kind of a business relationship between Dennis – between, I'm sorry, Brian and Jorge that we should have known about and didn't and didn't, and we shouldn't have ordered maybe the Brian tomato from Jorge. That's the accident. It is not knowing what maybe there was a business relationship by which we were prohibited. Also, Your Honor, conversion is loss of use, includes the loss of use of the property, and that was alleged specifically in the complaint by Brian Distributive. Let me continue, Your Honor. All that's necessary. Let's go back there. You're saying it was an accident that Dennis dealt with Jorge because he didn't know about Jorge's relationship with Brian. Right. Because, Your Honor – yeah, I'm sorry. But the question is not what is in the background as to knowledge or not knowledge. The question is whether the act committed by Dennis was a negligent act or not. And he committed an intentional, volitional act in entering into contract negotiations. I mean, it isn't like driving a car down the highway and negligently not seeing a stop sign. No, it's not like wrongful termination. It's not like sexual misconduct. This is different, Your Honor. This is – you look at the pleadings here. You look at the possibility of coverage. You've got the underlying action plaintiff, Brian, saying, well, we had this oral contract, but maybe not. Maybe it was a business relationship, and Dennis Produce should have known about it because they dealt with Brian years ago. When you look at the act, the act is – essentially it is we shouldn't have dealt with Jorge directly. We should have went through – we should have went through Brian. But they characterized it as intentional. It can also be characterized as negligent. The act of dealing with buying product from Jorge directly can be considered an accident because the accident is we didn't know we shouldn't have done it. My clients didn't know they shouldn't have approached Jorge. So the insurance company should pay for a defense for you to show that, in fact, Dennis didn't know about the relationship. And if there's no knowledge about the relationship, there's no intentional interference, and there's no liability. Well, Your Honor, as it turned out, the complaint – the case was defended successfully. This case might have been a groundless, false, or fraudulent claim by Brian, but frankly, the insurance company is still on the hook, still has to defend – has a duty to defend those cases. The problem that I have with the approach of the insurance company in this case is that they looked at this thing with tunnel vision, myopia, when, in fact, I believe, Your Honor, Your Honors, they had to look at it broadly. Because when one looks at the obligations of an insurer under California law, the law requires that the insurance company consider possibilities of coverage, potentials of coverage. Well, you can't do it, Your Honors, if you simply write a letter to the insured attorney and say, well, there's willful conduct here, it's not covered. Or there's an exclusion here, it's not covered. I mean, in this case, Your Honors, my predecessor went to the insurance company time and time again with information, stunned that the insurance company didn't pick up the defense. Well, and I understand – I guess all we've tried to focus on is accident. When we get to the loss of the use of the property, it worries – I mean, we go conversion of property. What was the loss of the use that is entitled to be suggested under this contract? All that happened is the whole thing went away. The property wasn't used, wasn't lost. There was just money lost. The property wasn't lost. The use wasn't lost. The money was lost. There was no loss of use here. The constituted claim for damages from loss of use, the damages must be the direct result of the property being damaged or otherwise rendered unusable by its owner. Let me explain that for you, Your Honor. Loss of use, they're saying they bought equipment for Jorge's use, including a tomato sorter, a jack pallet, a Jeep Cherokee. Had they known what was going to happen, they would have pulled the equipment from Jorge, and they would have made a deal with another grower. They lost that opportunity. That's their claim in this case, and that fits perfectly with the language of the insurance policy. And when you talk about money, yeah, of course, every claim is for money. That's what the insurance company has to defend. This is a comprehensive general liability policy. Claims are for money. This was for money. I don't understand that argument. The loss of use of property was by Brian because they didn't have Jorge after Dennis stole him, right? Well, I mean. That was a claim of damages, right? Right. But it was still from the volitional act of stealing Jorge as a client. Well, I mean, that's one interpretation of the complaint that you can. . . It's the only interpretation. No. I mean, they didn't lose the use of the property because it was bad weather. They lost it because the client got stolen. Well, no, that's one possibility, Your Honor. Another possibility is maybe there wasn't an oral contract between Jorge and Brian. Maybe Jorge had the right to do what he did, and maybe Jorge is the one that deceived Brian. That's. . . Do you want to talk about your claim on advertising injury? The claim on advertising injury, what the district court did was analyze a trade liable claim. This is not a trade liable claim. This is a disparagement or slander of title of personal property. How was there disparagement by you putting Jorge's tomatoes in your boxes? How was it? It was palming off, I grant you that. But palming off is not disparagement. Well, it is. It's actually saying, gee, their product is better than ours, not our product is better than theirs. Well, no, no, Your Honor. Your Honor, for the consuming public or whoever buys this, maybe they're brokers. How are you disparaging Brian by taking Jorge's tomatoes and putting them in your boxes? It's palming off, I grant you. Well, no. Here's how we're disparaging it. Because they claimed this was something they were going to seek a patent for. This is a proprietary product, according to Brian, according to the testimony of Mr. Bompenshaw, which my predecessor submitted to the carrier. The disparagement is when customers look at the product and they say, hey, this looks like and tastes like the Brian tomato, that diminishes the value of the Brian tomato because they said this is proprietary. But by the act of advertising it as their own, that's a publication. And it says publication is the language and the policy. The publication is this is nothing special. That's what the – Well, I guess my worry about the advertising injury is when I read what it means, injury arising, and then it says that it's an oral or written publication of material in your advertisement that slanders or libels a person or disparages their goods, and I go right down into definitions and it says advertisement does not include the design, printed material, information, and images contained in, on, or upon the packaging or label of any goods. That's a good point you make. I'll tell you what the problem is. I answered a question saying advertising injury. Actually, I was wrong. It's not advertising. The definition of that was changed, as Your Honor pointed out. The definition of those terms in the personal injury section of the policy were not changed. Were not changed. You pointed out correctly that the advertising claims were made more limited by the change in the policy. However, the personal injury claims, the definitions were not changed. I've run over my time, I believe. Yes, you have. So I will. Thank you, counsel. Good morning. Steve Hayes appearing on behalf of defendants and appellees, the Hartford entities. There is no coverage available to the appellant in this case under the two theories advanced after a review, careful review of the complaint. There is no property damage because there's no occurrence and there's no economic harm, and under the personal injury coverage, which is a specifically enumerated offense not requiring the occurrence, there is no wrongful claim regarding Bryant. There is no negativity in terms of Bryant or Bryant's products on the face of this complaint that would trigger the personal injury coverage. So the two approaches seeking a defense are that there is property damage and that there is disparagement or defamation of Bryant under the personal injury coverage. Neither are present. And there is no entitlement to a defense by the appellant in this case under this policy language as it is applied to the allegations of this four-cause-of-action second amended complaint. It's the third time that the plaintiffs in the underlying case chose to couch their allegations, and in that, four causes of action, intentional interference with an oral contract, intentional interference with prospective economic advantage or relationship, the alternative, negligence, and then conversion. If you look at the third cause of action, the one that has the word negligence on it, and under the case law, Swain and Marie B., simply because a label is placed on a cause of action, it does not determine the substance of the allegations. The specific conduct that is attributed to Dennis Produce in each of those cause of actions is that they, as the Court has said, stole Jorge. They took the crop. They changed labels to hide their act. They ignored the specific levy and attachment requirements of the Superior and Federal Courts in terms of the profits that were generated by taking that tomato crop. There was nothing negligent about what Dennis Produce did. It was volitional conduct, it was intentional conduct, and it was done for the economic benefit of Dennis Produce. There's no coverage under a comprehensive general liability policy or the umbrella policy that followed form in this circumstance for the conduct that is alleged in this complaint. The umbrella policy didn't drop down and cover risks not covered by the underlying policy? It would, Your Honor, but the language and definitions are following form. Correct. In this case, the lack of an occurrence, which is specifically defined as an accident, is part and parcel of the property damage definition. And under 15B of the policy, loss of use of tangible property that is not physically injured, we have no physical injury here, all such loss of use shall be deemed to occur at the time of the occurrence that caused it. What is missing here is an accident. There is nothing accidental about the conduct as pled by Brian in the underlying case as to Dennis. And, in fact, the Second Amendment complaint talks that they specifically knew of the relationship, that the blue book reference in the Second Amendment complaint and how these people deal with each other in the produce industry, this is a circumstance where a relationship was interfered with, and the reason for that interference clearly pled in the complaint was that this was Jorge's opportunity not to have to reimburse the advancements of over 400 and some thousand dollars that Brian had provided. The wire transfers that were made, the seed that was provided for the crop, the equipment that was provided for the growing and the harvesting of the crop. He was dodging the crop loan. Pardon me, Your Honor? He was dodging the crop loan. Yes, Your Honor. So in the underlying suit, was Jorge found liable? How did it all turn out? Your Honor, my understanding is that it was settled and that there was no money paid, either side, either way. I take that back. I'm not sure how things worked out in the Jorge action. They filed in state court. It was then removed under the Agricultural Act to federal court, and I can't answer Your Honor's question as to how that resolved. The suit between Brian and Dennis, and I misinterpreted the question, was that no money exchanged hands on the eve of trial. It was settled. In addition to the lack of occurrence, there's no property damage, and although the argument is that there is somehow loss of use, this is nothing more than an economic loss, and the monies that were invested by Brian was to get the crop, which Brian would then sell and then take 18% off the top for the complaint as its profit. Jorge would get the balance, and from Jorge's balance, a reimbursement of the monies advanced to allow the crop to be planted, harvested, and transferred to Brian for sale would be removed. It is all economic loss, so we have no injury to personal property, tangible personal property. We have no loss of use of tangible personal property, and we have no occurrence. There is no entitlement to a defense under the property damage provision of the Hartford policies. In terms of the second theory of coverage, that there is somehow the enumerated personal injury of defense of defamation and disparagement, it doesn't exist. There is no allegation in this complaint that disparages Brian or Brian's product. As Judge Bea pointed out in his questioning, this is, at best, palming off, and in that respect, I submit to the Court, the Microtech case clearly specifically says that palming off does not trigger coverage under even the broader language of the policy it was dealing with in that circumstance, which included disparagement of product as well as defamation. You have to have a statement that says the product is bad in some respects that attacks the integrity, saleability of the product. I support his argument that by representing that the now Dennis Tomatoes of Jorge were as good as the Brian Tomatoes of Jorge, the Brian Tomatoes came off worse. They weren't unique any longer. Is that disparagement? No, Your Honor. I think what you just described is palming off, and I don't think in that example we have a disparagement of the product. It's actually, I mean, what they're actually arguing is that by putting these special, wonderful tomatoes in packaging that is their packaging, that is tantamount to a representation that these aren't the great tomatoes that the Brian Tomatoes are, which is kind of an argument I wouldn't want to be making about my own product. Your Honor, I do think that that's palming off, and that's exactly what occurred in the Microtech case where the Microtech was claiming that they were providing the code that was really being provided by Green. And as such, under this presentation, under this complaint, with this conduct and these allegations, the two theories or themes of the claim or the defense obligation that is sought, there's no obligation. Let me ask you a question. They pled negligent interference with prospective economic advantage. Is there a complaint which can be pled in California, or is there a case which would suggest that a negligence interference with prospective advantage could not fit this contract? Because the worry that I had with this, and defending insurance companies, you should have too, that we have a negligent interference with prospective economic advantage, given the elements of that negligent interference. Under California law, which is what I had to look at, it seems to me that the fact one could plead it might get it under an occurrence, therefore giving rise to the duty to defend. Your Honor, I think that the occurrence definition, which requires an accident, you will always have volitional conduct that is not going to be accidental, and I don't believe that is going to give rise to, and I'm not aware of a specific case that has even addressed the situation. What are the elements of negligent interference in your mind? You have to have an agreement that is breached. It has to be interfered with. There has to be damage approximately caused by the interference. The new CASI instructions, I think it's 2204, address that, and naturally I did not bring that with me. Does ISO define accident? It is defined in the policy, Your Honor, as an accident. No, no, I know occurrence is defined as an accident. I'm sorry. But is there a separate definition of accident in the standard insurance agreements? I would have to take a minute to go into the record to the Hartford policy to see the specific. I'm not asking about that.  I don't know that, Your Honor. Well, as I have understood, and this is the worry that I have for this particular situation on a duty to defend, a negligent, and I appreciate that counsel suggested that the pleading was not the only thing I had to look at, and I understand that. I've got to look at every one of the lines to make sure everything that's pled. But as the insurance company reads this pleading and sees negligent interference with prospective advantage, what you're really suggesting is that your particular contract will never cover this tort outlined under California law. However, that is exactly what this coverage was intended to provide, is for negligent action and California law giving a, if you will, a cause of action for that kind of action, which is a tort action. You could have, Your Honor, in this situation generally, depending on the pleadings in that situation, and, you know. I mean, my worry is that I have to read this complaint and then apply it. I'm trying to envision why this complaint could not have made it. What could one plead other than what has been pled? The point, Your Honor, is for the determination in this case, it is this complaint. And the case law, as you are well aware, Gunderson and others says, you don't anticipate, you don't speculate as to how it may be amended or alternatively repled. Looking at the facts of this complaint and even going to the third cause of action, which is the negligent interference, it is exactly the same conduct that is used to support the conversion and the intentional acts. And all that is done is add in the alternative, negligently knew or should have known. But on the face of this complaint, as you apply the policy and the potential triggers of a duty to defend, and we're down to two, which is, is there property damage or is there personal injury for disparagement or defamation? I submit, Your Honors, that there is not. What you're saying is that for negligent interference with respect to economic advantage, the act which is negligent must interfere with the economic advantage, not a volitional act that interferes. And simply throwing around a label of negligent interference doesn't change the acts which are alleged and the facts which are alleged. Yes, Your Honor. It doesn't change the conduct. It doesn't put them in a different suit than they perpetrated the or engaged in the conduct with. Actually, on that one, you could also get around the dilemma that Judge Smith poses. And I agree with him. It is a dilemma. You know, we all have gone around and round on when you're intentionally driving down the street at 90 miles an hour and you run into a car that's actually going the speed limit. It's an intentional act to be speeding, but it's an accident that would be covered by your policy. Correct. Nevertheless. So I understand completely what Judge Smith is asking about. But there was no property damage. So the way I would see that is, okay, maybe they accidentally interfered with the prospective economic advantage, but there was no damage to property or loss of use of property, and that's how that why there would be no potential for coverage under that claim. Yes, Your Honor. It's a two-pronged test, as you point out. You have to have the occurrence, which is defined as the accident, and you have to have property damage. And one of its alternative explanations. And here all we have is really economic harm, loss of benefit of the bargain, the profit from the tomato crop, which would have allowed the sharing of that between the two, Jorge and Brian, and then reimbursement for monies advanced to allow the tomato crop to be grown and marketed. If the Court has other questions. No. All right. Thank you very much, counsel. Thank you very much. We will now adjourn for this session of the Court. And, Mr. Werner, I apologize to you. I know you didn't plead that complaint. I know you were only pled against there. Can I just say one thing? I know that I'm hungry also, but I think just to do that. It has nothing to do about hunger. We have our time limits. You've already gone over, and it's not fair to other parties to hold them to their time limits and not other parties. So we're in adjournment. Thank you.
judges: Wardlaw, Bea, Smith